UNITED STATES SOUTHERN DISTRICT COURT
OF NEW YORK

| | |
|---|---|
| BRIAN MCCABE ) | Civil Action No. |
|         Plaintiff ) | |
| ) | |
| v. ) | |
| ) | COMPLAINT |
| ENTERTAINMENT ONE US LP and ) | |
| SWIRL RECORDING & FILM INC. ) | |
| D/B/A SWIRL FILMS, INC. ) | |
|         Defendants ) | |

## PARTIES

1. Brian McCabe ("McCabe") is a resident of the State of New York with an address at 22731 First Ave., Ronkonkoma, NY 11779.

2. Entertainment One US LP ("EOne") is a corporation with business address of 22 Harbor Park Drive, Port Washington, NY, 11050 and 200 Varick Street, New York, NY 10014.

3. Swirl Recording & Film Inc. d/b/a Swirl Films, Inc ("Swirl") is a corporation with a business address of 5101 Dunlea Court Wilmington, NC 28405.

## JURISDICTION

4. The amount in controversy exceeds Five Hundred Thousand Dollars ($500,000.00).

5. Defendants are in violation of Federal Copyright Common Law and Lanham Act.

6. Jurisdiction is predicated on federal question and the New York Long Arm Statute. Defendant Swirl purposefully availed themselves of the privilege of conducting activities in the State of New York and has established minimum contacts sufficient to confer jurisdiction over said Defendant. The assumption of jurisdiction will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process.

## FACTS

7. McCabe is an actor that performed in the program "Community Service".

1

8.   McCabe signed a contract for this acting services with Swirl dated December 12, 2012.  See Exhibit "A".

9.   McCabe only gave Swirl the right to air his performance on certain television networks and never gave Swirl the right to have his copyrighted performance appear in a DVD.

10.   Swirl was very aware that McCabe's did not grant DVD, CD or on-line rights and subsequently attempted to obtain the rights from McCabe in February 2013.  See emails at Exhibit "B".  To quote Eric from Swirl on the matter, he stated as follows in regards to McCabe's contract with Swirl:

> No, he has changed his deal and stated that he is not giving us permission for DVD. JD this hurts me and you as we now CAN NOT release this show on DVD because he is in it and has NOT given us permission. I need you to handle. At the end of the day we will pay him the agreed upon amount b ut know we cannot move forward withjhj ANY DVD opportunities. Also this makes us look amateur to GMC…

11.   Swirl knowingly disregarded the fact that Swirl was not given permission by McCabe and licensed "Community Service" to EOne for DVD and on-line sales.

12.   Upon information and belief, Swirl and EOne sold in excess of Forty Thousand (40,000) DVD copies of "Community Service" to Redbox and other parties and sold copies of the DVD in retail channels and on-line channels.

13.   Swirl and EOne sold "Community Service" online at amazon.com for $9.99.  See Exhibit "C".

14.   The actions of Swirl and EOne has violated the rights of McCabe. McCabe learned that the DVD was being distributed in December 2015.

15.   In December 2015, EOne was served with a cease and desist letter. EOne continues to sell "Community Service".

16.   The Defendants have violated McCabe's privacy and/or publicity rights.

17.   The action of Swirl and EOne was knowing and intentional.

18.   The actions of Swirl and EOne harmed McCabe in his business.

### COUNT I- COMMON LAW COPYRIGHT INFRINGEMENT

19.   Plaintiff repeats paragraphs 1-18 above.

20.   McCabe owns the copyright in his performance of "Community Service".

2

21. McCabe has not assigned his rights to his performance in "Community Service" to any entity for DVD sales, on-lines or CD sales.

22. Defendants have violated the rights of McCabe and have usurped his copyright in his performance.

23. The Defendants have harmed McCabe in his business.

## COUNT II- RIGHT OF PUBLICITY/PRIVACY MISAPPROPRIATION
## N.Y. Civ. Right Law Section 51

24. Plaintiff repeats paragraphs 1-23 above.

25. McCabe owns the copyright in his performance of "Community Service".

26. The Supreme Court has recognized that state law may protect a celebrity's right of publicity in the content of his or her unique performance. In Zacchini v. Scripps-Howard Broadcasting Co., 433 U.S. 562 (1977).

27. The New York Statute gives performers ownership interest in the commercial exploitation of their "name, portrait, picture or voice," N.Y. Civ. Rights Law § 51.

28. A plaintiff bringing a misappropriation or right of publicity claim must show that the defendant used his or her name, likeness, or other personal attribute for an exploitative purpose. The meaning of "exploitative purpose" differs depending on whether we are dealing with a right of publicity or a misappropriation claim:

29. The right of publicity is the right of a person to control and make money from the commercial use of his or her identity. A plaintiff that sues you for interfering with that right generally must show that you used his or her name or likeness for a commercial purpose. This ordinarily means using the plaintiff's name or likeness in advertising or promoting your goods or services, or placing the plaintiff's name or likeness on or in products or services you sell to the public.

29. Defendants' have unlawfully placed Plaintiffs' name and image in the DVD "Community Service".

30. Such actions have harmed McCabe in his business.

## COUNT III- PERMANENT INJUNCTION

31. Plaintiff realleges paragraphs 1-30 above.

3

32.     Plaintiff is entitled to an injunction against Swirl and EOne.

33.     *Grounds.*

   Plaintiff will suffer immediate and irreparable injury, loss, or damage if Defendants' conduct described above is not enjoined for these reasons:  (1) Defendants are infringing on the copyright of McCabe (2) Corp in causing confusion in the marketplace (3) Defendants' are aware of the McCabe copyright yet it continues to utilize the mark in bad faith.

   Plaintiff does not have an adequate remedy at law because the Defendants continue to use Plaintiff's copyright.  Plaintiff has exercised due diligence in prosecuting this claim.  The injury to Plaintiff if the Defendants continue the conduct described above would outweigh any injury the restraining order and injunction might cause Defendants. An issuance of the restraining order and injunction would not disserve the public interest.

34.      Plaintiff has a likelihood of success on the merits.

35.     Plaintiff seeks a restraining order restraining Defendants' their officers, agents, servants, and employees from directly or indirectly utilizing McCabe's name and likeness in DVD and on-line sales.

## COUNT IV- LANHAM ACT VIOLATION

36.     Plaintiff repeats paragraphs 1-35 above.

37.     McCabe owns an unregistered trademark in likeness.

38.     McCabe did not provide his approval for his image to appear in the DVD "Community Service"

39.     Under Section 43(a) of the Lanham Act. Section 43(a) creates liability for "[a]ny living person who, on or in connection with any goods or services, ... uses in commerce ... false or misleading representation of fact, which is likely to cause confusion ... or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." See Burck v. Mars, Inc., 571 F. Supp. 2d 446 (S.D.N.Y. 2008).

40.     The Defendants violated McCabe's right and violated the Lanham Act.

41.     McCabe has not assigned unregistered trademark in his likeness to appear on DVD.

42.     McCabe has been harmed in his business.

4

## COUNT V- ACCOUNTING

43.     Plaintiff realleges paragraphs 1-42 above.

44.     The Defendants have illegally and in violation of federal and New York State law, utilized McCabe's likeness, image and voice in the DVD "Community Service" in the manufacturing, distribution and content of the movie without  McCabe's permission.

45.     McCabe hereby demands an accounting of all sales of DVD "Community Service".

46.     McCabe has been harmed in his business by the Defendants actions.


**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY**

    The Plaintiff demands,

1.   Judgment on all counts;
2.   Interest;
3.   The sum of Five Hundred Thousand Dollars ($500,000.00).
4.   Attorneys Fees;
5.   An injunction retraining Defendants from utilizing "McCabe" unlawfully; and,
6.   Any other relief this Court deems just and equitable.

    BRIAN MCCABE

    _____
    Christopher L. Brown
    NYS Bar No. 2953891
    Brown & Rosen LLC
    Attorneys At Law
    100 State Street, Suite 900
    Boston, MA 02109
    617-728-9111 (T)
January 14, 2016    617-695-3202 (F)
    cbrown@brownrosen.com

5

# EXHIBIT A



**Swirl Films, Inc**

Swirl Recordings & Film, Inc.
PO Box 10025
Wilmington, NC 28404

December 12, 2012
Brian McCabe
22731 First Ave
Ronkonkoma, NY 11779

Re: **"JD Lawrence's Community Service"/Brian McCabe/Talent Agreement**

Dear Brian:

This will confirm and constitute the essential terms of agreement (the "Agreement") between Swirl Films, Inc. and Brain McCabe ("Talent") in connection with the Taped Stage Play Production currently titled "JD Lawrence's Community Service"

| | |
|---|---|
| Production Company: | Swirl Recordings & Film, Inc. ("Production Company"). |
| Picture: | "JD Lawrence's Community Service" (the "Picture"). |
| Location: | Wilmington, NC |
| Talent: | Brian McCabe ("Talent") (SS#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) |
| Lender: | ("Lender") (Fed. ID#:_____). |
| Role: | "Vinny" |
| Services: | Lender shall cause Talent to render all customary pre-production, production and post production services as requested by Production Company. |
| Schedule: | Talent's services for rehearsals, if requested by Production Company, shall be required for approximately two (2) days of rehearsal prior to commencement of principal photography, subject to Talent's professional availability. |
| | Talent's services for principal photography shall be required for approximately Two (2) days. |
| | Talent's services shall commence either on or around December 10th, 2012. |

1

No.4606  P. 14/20                    Dec. 12. 2012 9:18AM  Staybridge

<div style="text-align: right;">**No quote**</div>

|  |  |
|---|---|
|  | The foregoing dates and number of required work days are subject to reasonable extension and/or modification, and also subject to events of force majeure. |
| Post-Production: | As requested by Production Company, for no additional compensation, on such days as may be designated by Production Company, subject to Talent's professional availability, Lender shall cause Talent to render post-production services, including without limitation, added scenes, retakes, looping and dubbing. |
| Fixed Compensation: | In consideration of Lender and Talent's services hereunder, provided Lender and Talent are not in breach of this Agreement or any of Lender and/or Talent's obligations hereunder and further subject to Production Company's rights in the event of Lender or Talent's disability and/or default and/or events of force majeure, Lender shall be paid fixed compensation of **OneThousand Dollars ($1,000.00) Dollars**("Fixed Compensation"), payable upon completion of principal photography. Except as provided herein, no other sums shall be payable in connection with the acquisition, exercise or exploitation of the rights granted by Lender and Talent pursuant to this Agreement. |
| Travel: | Production Company shall provide Talent 1 1st Class round trip airfare plus 5 days per diem at $40 per day |
| Accommodations: | Production Company shall provide Talent with hotel accommodations while on location during rehearsals, principal photography and post-production (if Talent's services are required). |
| Ground Transportation: | Production Company shall provide Talent with non-exclusive ground transportation to and from set for rehearsal, principal photography and post-production (if Talent's services are required). |
| Credit: | Provided that Talent has fulfilled her obligations and appears recognizably in the Picture as commercially released as determined by Production Company and further provided that Talent is not in uncured material breach of Talent's obligations hereunder, Talent shall be entitled to receive credit on screen. All aspects of Talent's credits, including, without limitation, placement, position, size, type, font and duration, shall be determined by Production Company at its sole discretion. Credit in paid ads and other materials shall be at Production Company's sole discretion. No casual or inadvertent failure to comply with any credit provisions contained herein shall be deemed to be a breach of this Agreement by Production Company. |
| Name and Likeness: | Production Company, its licensees, distributors, assignees and designees shall have the perpetual, non-exclusive right to use and license the use of Talent's name, photographs, biographical data, voice, likeness and other identifiable caricature in connection with the making, distribution, exhibition, advertising and exploitation of the Picture and any promotional films in connection with the Picture and the exploitation of |

*[Handwritten annotation:]* BM

*I am under the understanding and agree that my name and likeness will only be used and aired on the GMC and Aspire networks. I have not agreed to or been informed or paid by Swirl Films or Who's Laughing Now for any additional fee for a DVD, CD, or online medium.*

2

8

Case 1:16-cv-00363-GM Document 6 Filed 01/19/16 Page 9 of 18

Case 1:16-cv-00363 Document 1 Filed 01/15/16 Page 9 of 18

**No quote**

|  |  |
|---|---|
| | any rights granted hereunder (including on or in connection with soundtrack album, records and recordings). |
| Promotion: | At Production Company's reasonable request and subject to Talent's availability, for no additional compensation, Talent shall give interviews (including talk shows) and render other promotional services in connection with the Picture, including attending premieres and festivals and appearing in "behind the scenes" or "making of" films. Lender and Talent further agree to the use by Production Company in such promotional films of film clips and behind-the-scenes shots in which Talent may appear. Production Company shall be the sole and exclusive owner of all services, results and proceeds rendered pursuant to this paragraph and same shall be deemed a work "made-for-hire" for Production Company (or assigned to Production Company as provided below if not deemed a work-for-hire) and subject to all of Production Company's rights as further set forth herein. |
| Results and Proceeds: | Lender and Talent hereby irrevocably grant to Production Company all rights of every kind in and to all photographs, performances, sound recordings, and other results and proceeds of Lender and Talent's services hereunder and all literary, dramatic and musical material written, composed, submitted, improvised and/or invented by Lender and Talent hereunder, and of all artistic and creative contributions of any kind made by Lender and Talent in connection with the Picture, it being agreed that all such results and proceeds and contributions of Lender and Talent's services hereunder will be deemed to be a work-made-for-hire for Production Company under the U.S. Copyright Act of 1976, as amended, and that Lender and Talent will be deemed to be Production Company's employee-for-hire, with Production Company being deemed the "author" of all such results and proceeds and contributions. If under any applicable law the results and proceeds as set forth herein are not deemed or otherwise considered a work-made-for-hire, then to the fullest extent allowable and for the full terms of protection otherwise accorded to Lender and Talent under such applicable law (including any renewals, extensions and revivals thereof), Lender and Talent hereby irrevocably assign and transfer to Production Company such rights throughout the universe and in perpetuity, and in connection therewith, any and all right, title and interest of Lender and Talent's results and proceeds in the Picture and any other works now or hereafter created containing such results and proceeds. Without limiting the generality of the foregoing, Production Company shall be the sole and exclusive owner of the Picture and Production Company shall have the sole and exclusive right to distribute, exhibit and otherwise exploit all or any part of the results and proceeds and contributions of Lender and Talent's services hereunder as embodied in the Picture or otherwise, in perpetuity, throughout the universe in and by all media now or hereafter known. Nothing contained herein shall require Production Company to use or otherwise exploit any rights acquired hereunder. Lender and Talent hereby waive the benefits of any provision of law known as "droit moral" and/or "moral rights" or any similar law in any jurisdiction of the universe and hereby agree not to institute or support, maintain, or permit any action or lawsuit on the grounds that the Picture or any other film and/or soundtrack and/or any |



3

<u>No quote</u>

|  |  |
|---|---|
|  | other ancillary, subsidiary, related or other product produced or exploited by Production Company violates any of Lender's or Talent's rights or is in any way a defamation or mutilation of the product of Lender's or Talent's services. Without limiting the foregoing, Lender and Talent hereby irrevocably assign, license and grant to the Production Company (or its designee), exclusively, throughout the universe, and in perpetuity, the rights, if any, of Lender and Talent to authorize, prohibit, and/or control the renting, lending fixation, reproduction, and/or other exploitation of the Picture (or any rights therein) by any media and means now known or hereafter devised as may be conferred upon Lender or Talent under applicable laws, regulations, directives, including, without limitation, any so-called "Rental and Lending Rights" pursuant to any European Economic Community ("<u>EEC</u>") directives and/or enabling or implementing legislation, laws, or regulations enacted by the member nations of the EEC. |
| Warranty/Representation Indemnity: | Lender and Talent hereby warrant and represent that: (i) Lender and Talent have the full right and authority to enter into this Agreement on behalf and Talent, to furnish Talent's services and to grant the rights herein granted; (ii) Lender and Talent are not subject to any obligation or disability which will prevent or interfere with the full completion and performance of all the obligations and conditions to be kept and performed hereunder; (iii) Lender and Talent shall indemnify and hold Production Company harmless from and against all liabilities, penalties, losses or expenses, including reasonable outside attorney's fees, imposed upon, sustained or incurred by Production Company by reason of Lender or Talent's breach or alleged breach of this Agreement and/or any of Lender or Talent's warranties, representations and obligations made herein or any other acts or omissions of Talent. |
| Assignment: | Production Company may assign this Agreement (including, without limitation, any or all of its rights and obligations hereunder) to any person or entity without limitation. The nature of Talent's services hereunder are personal and unique in nature and neither Lender nor Talent shall, without Production Company's prior written consent, assign or delegate any of Lender or Talent's rights or obligations hereunder. |
| No Injunction: | The sole remedy of Lender and Talent for any dispute relating to the subject matter hereof (including, without limitation, disputes regarding credit) shall be an action at law for damages (if any) actually suffered by Lender and/or Talent. In no event shall Lender and/or Talent terminate or rescind this Agreement or the rights granted hereunder or seek or be entitled to enjoin or restrain the exhibition, distribution, advertising, marketing or other exploitation of the Picture or seek or be entitled to any other equitable relief. Notwithstanding anything to the contrary contained herein, Production Company shall not under any circumstances be liable for consequential, incidental, punitive, special, exemplary or indirect damages, or lost profits in connection with claims made by Lender or Talent or any other party, in connection with the Picture or this Agreement regardless of the form, or whether in contract or tort. |

4

**No quote**

At Production Company's request (if any), the balance of the terms of the Agreement shall be subject to good faith negotiation and will be in accordance with industry custom and practice within the budget parameters of the Picture. Unless and until Production Company replaces this Agreement with a long form talent agreement, this Agreement shall constitute the full, valid and binding agreement between the parties hereto and supersedes any and all prior agreements, written or oral, entered into by and between Lender/Talent and Company. **This Agreement shall be interpreted in accordance with the laws of the State of California, applicable to agreements executed and to be wholly performed therein. The parties agree and consent that the jurisdiction and venue of all matters relating to this Agreement will be vested exclusively in the federal, state and local courts within the State of California, Los Angeles.**

The term of Lender and Talent's services hereunder is not guaranteed and may be terminated by Production Company at any time, without cause or for cause (including any default, disability, death or event of force majeure as determined by Production Company), at Production Company's sole discretion, in which case no monies or compensation shall be payable to Lender or Talent other than compensation actually accrued (and which is fully vested and fully payable prior to termination) for services properly rendered prior to the date of such termination.

If the above conforms to your understanding, please sign below and return this Agreement to Production Company's attention.

**AGREED TO AND ACCEPTED:**

Swirl Recordings & Film, Inc.        TALENT

By: _____         By: _____
Eric Tomosunas                      Brian McCabe
Producer

5

# EXHIBIT B



KIM WILLIAMS <whoslaughingnowinc@gmail.com>

## Community Service

**Eric Tomosunas** <eric@swirlfilms.com>  Tue, Feb 5, 2013 at 11:51 AM
To: Who's Laughing Now Office <whoslaughingnowinc@gmail.com>
Cc: David Eubanks <david@swirlfilms.com>

Please see below

Eric Tomosunas ( Producer )

910.798.2934 PH

910.798.2954 FX

http://www.imdb.com/name/nm1358327/

www.swirlfilms.com

 

This e-mail and any attachments may contain confidential and privileged information. If you are not the intended recipient, please notify the sender immediately by return e-mail, delete this e-mail and destroy any copies. Any dissemination or use of this information by a person other than the intended recipient is unauthorized and may be illegal.

**From:** Who's Laughing Now Office [mailto:whoslaughingnowinc@gmail.com]
**Sent:** Tuesday, February 05, 2013 11:44 AM
**To:** Eric
**Subject:** Community Service

13

Good Morning Eric,

I had a spoke to Michelle this morning and had a few questions. Has the producer card for my name (Shannon Lawrence) been added to the Community Service credits? No . I need a SIGNED agreement in order to do this. We just don't have the time. I can add one to the end credits but again I need a signed agreement to do so.

Is anyone doing an IMDB for the show? I will ask Dave but I have not

Has Brian McCabe's check gone out? If not, when will it be mailed? No, he has changed his deal and stated that he is not giving us permission for DVD. JD this hurts me and you as we now CAN NOT release this show on DVD because he is in it and has NOT given us permission. I need you to handle. At the end of the day we will pay him the agreed upon amount but know we cannot move forward withjhj ANY DVD opportunities. Also this makes us look amateur to GMC… For the record Sheryl Lee Ralph doesn't even participate in the DVD and she gave us rights

If so, do you have the tracking information?

Shannon

--

JD Lawrence

**408.475.3529 PH**

@JDLawrencePlays

www.jdlawrencepresents.com

*Writter, director, and star of over 15 nationally acclaimed touring productions.*
*Known as The King of Dramedy, JD Lawrence has mastered the art of improv.*

14



This e-mail and any attachments may contain confidential and privileged information. If you are not the intended recipient, please notify the sender immediately by return e-mail, delete this e-mail and destroy any copies. Any dissemination or use of this information by a person other than the intended recipient is unauthorized and may be illegal.

15

# EXHIBIT C

http://www.amazon.com/Community-Service-J-D-Lawrence/dp/B00KM5F38C




Community Service
J.D. Lawrence (Actor, Director), Terri J. Vaughn (Actor) Rated: NR (Not Rated) Format: DVD
1.3 out of 5 stars 3 customer reviews

Amazon Video
$2.99 — $9.99
DVD
$8.69

17

| Additional DVD options | Edition | Discs | Price | New from | Used from |
|---|---|---|---|---|---|
| DVD (Aug 05, 2014) "Please retry" | — | 1 | $8.69 | $7.90 | $0.99 |
| Watch Instantly with amazon video | | | | Rent | Buy |
| Community Service | | | | $3.99 | $9.99 |
| Community Service | | | | $2.99 | $9.99 |

Unlimited Streaming with Amazon PrimeStart your 30-day free trial to stream thousands of movies & TV shows included with Prime. Start your free trial

18